```
              IN THE UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF FLORIDA
                 CIVIL CASE NO.: 1:17-cv-21994
```

U.S. BANK TRUST, N.A.,
AS TRUSTEE FOR LSF9
MASTER PARTICIPATION TRUST.,

    Plaintiff,
vs.

PAUL PHILLIP SACA,
PAUL JULIUS SACA
A/K/A PAUL JULIO SACA,
KAYANNA DEWEY,
THE UNITED STATES

    Defendants.
_____/

## COMPLAINT

Plaintiff sues the Defendants as follows:

1. Plaintiff is a national bank, its principal place of business in Ohio, of which it is a citizen per 28 U.S.C. § 1348.

2. The Saca Defendants are individuals domiciled in and citizens of Florida per 28 U.S.C. § 1332. At all times relevant, Paul Phillip Saca [PPS] knowingly acted on behalf of and within the scope of his agency for his father, Paul Julius Saca [PPS] for which PPS is vicariously liable, from which they mutually benefitted, approved and ratified.

3. Defendant Dewey is an individual, domiciled in and a citizen of Florida, per 28 U.S.C. § 1332.

4. Per 28 U.S.C. §1331, §1346, §2409 and §2410, federal jurisdiction exists as the United States asserts an adverse

1

interest, equity or claim in the realty at issue, subordinate federal tax liens requiring relief in this case. ***Calif v. Ariz***, 440 U.S. 65-67 (1979); ***Equity v. Lenz***, LEXIS 6768 (11th Cir. 2011); ***Fl. v. Dept.***, 768 F.2d 1251 (11th Cir. 1985); ***United States v. Morrison***, 247 F.2d 290 (5th Cir. 1957) The Court has jurisdiction over the Property. ***Wabash v. Adelbert***, 208 U.S. 54 (1907). Per 28 U.S.C. § 1367, jurisdiction exists on all claims.

5.  Otherwise, per 28 U.S.C. § 1332, diversity jurisdiction exists as the private parties are diverse and sum in controversy exceeds $76,000.00 per the value of the realty at issue and/or relief from plaintiff's perspective. ***Cohen v. Office***, 204 F.3d 1077 (11th Cir. 2000); ***Occidental v. Bullard***, 995 F.2d 1046 (11th Cir. 1986). Value may be determined by an instrument governing the property such as those at issue.

6.  Personal jurisdiction exists/is proper per Fla. Stat. § 48.191 and/or the Constitution as the Defendants reside in and/or conduct business in Florida and/or claim ownership/other interests in the realty at issue and/or consented to this forum.

7.  Per 28 U.S.C. § 1391 and § 89, venue is proper as the Defendants reside in and/or a substantial part of the events or omissions giving rise to suit occurred in this District, the location of the realty at issue.

8.  The real property at issue is described as:

Lot 15 of GRAPELAND HEIGHTS, according to the Plat thereof, as recorded in Plat Book 14, Page 63 of the Public Records of Dade County, Florida.

Lot 525 of GRAPELAND HEIGHTS, Section 2, according to the Plat thereof, as recorded in Plat Book 17, Page 14 of the Public Records of Dade County, Florida.

1600 34th Ave NW, Miami, Florida 33125

9.  Lots 15 and 525 are Parcel No. 01-3133-013-0153

10. Lots 15 and 525 encompass the same residence, a house, constructed in 1926, consisting of 4 bedrooms, 2 bathrooms, on a 12,012 square foot lot, with 3,298 square feet of living space.

11. On 4/8/60, Tomas and Caridad Gajate, in whom title was vested, executed a Warranty Deed conveying the Property to Lucia C. Saca, [LCS] recorded 9/1/60, Book 2004, Page 225.

12. The 1960 Deed describes the Property as Lots 15 and 525.

13. On 7/11/75, LCS executed a Warranty Deed conveying the Property to Alta Gracia Saca [AGP] and Paul Julius Saca [PJS], mother/son, joint tenants, recorded 7/14/75, B. 9043, Page 789.

14. The 1975 Deed describes the Property as Lots 15 and 525.

15. On 7/23/79, PJS and AGS executed an affidavit as to other property, claiming to be married and living at the Property, recorded 7/27/79, Book 10466, Page 791.

16. On 10/11/79, PJS executed an affidavit as to other property, claiming to be single and living at the Property, recorded 10/24/79, Book 10551, Page 437.

17. On 11/19/84, PJS executed an affidavit, claiming to be single, owner of the Property, described as Lot 15, disputing he was the debtor of a judgment recorded against Paul Saca at Book 12139, Page 1374, recorded 11/20/84, Book 12331, Page 2852.

18. On 4/3/85, PJS and his spouse, Judith Saca, executed a Warranty Deed conveying an undivided ½ interest in the Property, described as Lots 15 and 525, to AGS, recorded 4/3/85, Book 12465, Page 2251 and re-recorded 1/21/99, Book 18479, Page 2745.

19. On 1/21/99, AGS executed a Mortgage to Trust U.S.A., securing the Property, described as Lots 15 and 525, as collateral for a Note for $95,000.00, recorded 2/17/99, B. 18479, Page 2476.

20. On 1/21/99, Trust executed an Assignment of the 1999 Mortgage to Chase Manhattan Mortgage Corporation, recorded 11/15/99, Book 18864, Page 1325.

21. On 2/10/00 AGS/PJS executed a Mortgage to Bank of America [BOA] securing the Property, Lot 15, as collateral for a Note for $50,000.00 recorded 2/24/00 Book 18995, Page 3076.

22. On 2/24/02, AGS executed a Quitclaim Deed of Lot 15 of the Property to PJS, recorded 3/12/03, Book 21093, Page 194.

23. The 2002 Quitclaim Deed included the same Parcel Number for the Property as the prior warranty deeds.

24. On 2/21/03, PJS executed a Mortgage to Mortgage Electronic Systems [MERS] as nominee for Full Spectrum Lending [FSL], securing the Property as collateral for a Note for

4

$180,000.00, recorded 3/12/03, Book 21093, Page 0195.

25. On 3/14/03, Chase executed a satisfaction of the 1999 Mortgage, recorded 4/30/03, Book 21207, Page 1201.

26. On 3/17/03, BOA executed a Satisfaction of the 2000 Mortgage, recorded 4/23/03, Book 21193, Page 1323.

27. Upon information, the 2/21/03 Note/Mortgage satisfied the 1999 Note/Mortgage and/or 2000 Note/Mortgage.

28. On 8/1/03, PJS and/or PPS executed a Note for $215,000.00 to Fleet National Bank. [FNB]

29. On 8/1/03, PJS and/or PPS executed a Mortgage to FNB, indicating PJS and/or PPS owned the Property, which they could mortgage, grant and convey, described as Lot 15, including the Parcel Number, securing the Property as collateral for the 8/1/03 Note, recorded 9/23/03, Book 21673, Page 1713.

30. On 8/13/03, MERS executed a Satisfaction of the 2/21/03 Mortgage, recorded 9/2/03, Book 21597, Page 0326.

31. Upon information, the 8/1/03 Note/Mortgage satisfied the 2/21/03 Note/Mortgage.

32. On 9/25/03, PPS executed a Mortgage to FNB, promising he lawfully owned and could mortgage, grant and convey the Property, described as Lot 15, secured as collateral for a Note for $37,600.00, recorded 12/3/03, Book 21868, Page 1917.

33. On 2/19/04, PJS and/or PPS executed a Mortgage to Key Bank, indicating PJS and/or PPS owned the Property, which they

5

could mortgage, grant and convey, described as Lot 15, including the Parcel Number, secured as collateral for a Note for $30,896.00, recorded 3/18/04, Book 22129, Page 138.

34. The 2/04 Mortgage denotes PJS and PPS as the same person.

35. On 3/8/04, the Federal Reserve executed an Order, approving the merger of Fleet Boston Financial Corporation, parent of FNB with BOA, per an agreement and Plan of Merger, dated as of 10/27/03 and per a report to the SEC dated 3/30/04.

36. The FNB and BOA merger was completed on 4/1/04.

37. On 9/17/06, AGS died intestate, who resided in the Property, whose sole asset was Lot 525, per a Petition for Probate filed by PJS on 10/12/12, Book 28308, Page 2810.

38. Upon the death of AGP, all of her right, title and interest in Lot 525 vested equally in PJS and PPS.

39. On or about 12/3/08, PJS and/or PPS executed a Loan Modification of the 8/1/03 Note/Mortgage to BOA.

40. In the Modification, PJS and/or PPS agreed owing $188,533.84 in principal on that Note/Mortgage. [Mod. p. 1, ¶ 1]

41. In the Modification, PJS and/or PPS promised to pay the unpaid principal on that Note/Mortgage; interest would be charged at the yearly rate of $5.24%; per monthly payments of $1,536.62 on principal and interest, commencing 1/1/09 until 8/1/213 after which the loan would be satisfied.[Mod. p. 1, ¶ 1]

42. In the Modification, PJS and/or PPS agreed that Note/Mortgage were unchanged, not satisfied/released. [Mod. p. 1, ¶ 4)]

43. In the Modification, PJS and/or PPS agreed having no defenses, counterclaim or rights to offset of any kind against Lender or its agent on that Note/Mortgage. [Mod. p. 3, ¶ 5]

44. On 4/26/10, BOA s/b/m to FNB, executed an Assignment of the 8/13/03 Mortgage to BOA, recorded 9/22/10, B. 27429, P. 3013.

45. BOA acquired the 8/13/03 Note and/or all interests in the Note per its merger with FNB as provided by law.

46. BOA acquired the Modification and/or all interests in the Modification per its merger with FNB as provided by law.

47. On 9/20/10, Defendant Dewey obtained a state court judgment for $8,787.99 against PJS, recorded 9/20/10, Book 27426, Page 2226 and 10/1/10, Book 27440, Page 355

48. On 3/7/11, PPS filed a Chapter 7 Bankruptcy in the Court, Case No. 11-17058.

49. PPS admitted the existence of the 8/13/03 Note, the Mortgage on the Property and Modification, then held by BOA, occupied by PJS, in his sworn bankruptcy schedules. [Bk. D.E. 1]

50. PPS admitted that he and PJS owned the Property as joint tenants in his sworn bankruptcy documents. [Bk. D.E. 1]

51. On 7/1/11 PPS obtained a bankruptcy discharge. [Bk. 16]

52. On 3/28/11, the United States recorded a federal tax lien for $48,330.68 as to PJS, Book 27630, Page 3630, listing

7

his address as the Property, executed by Fred Banks on 3/3/11.

53. On 9/8/11, Key executed a Satisfaction of the 2/19/04 Mortgage, recorded 9/21/11, Book 27833, Page 1344

54. Key's Satisfaction denotes the Sacas as the same person.

55. As of 9/8/11, PPS owned an interest in the Property.

56. On 9/23/11, the United States recorded a federal tax lien for $15,152.82 as to PJS, Book 27835, Page 4790, listing his address as the Property, executed by A. Cordero on 9/8/11.

57. On 1/10/12, the United States recorded a federal tax lien for $1,490.43 as to PJS, Book 27955, Page 3338, listing his address as the Property, executed by A. Cordero on 12/13/11.

58. On 12/26/12, BOA, s/b/m to Fleet, executed a Satisfaction of the 9/25/03 PPS Mortgage, recorded 1/12/13, B. 28440, P. 3437.

59. As of 12/26/12, PPS owned an interest in the Property.

60. On 9/23/14, the United States recorded a federal tax lien for $6,590.05 as to PJS, Book 29319, Page 1950, listing his address as the Property, executed by P.A. Belton on 8/28/14.

61. On 4/14/15, BOA executed an Assignment of the 8/13/03 Mortgage to LSF9 Master Participation Trust, recorded 4/21/15, Book 1219, Page 1220.

62. BOA assigned and transferred the 8/13/03 Note and/or all interest in this Note to LSF9 as provided by law.

63. The above assignments and/or transfers of the 8/13/03 loan from BOA to LSF9 included the Loan Modification.

64. On 11/10/16, LSF9 executed an Assignment of the 8/13/03 Mortgage to Plaintiff, recorded 11/15/16, B. 30309, P. 344.

65. LSF9 assigned and transferred the 8/13/03 Note and/or all interest in this Note to Plaintiff as provided by law.

66. The above assignments and/or transfers of the 8/13/03 loan from LSF9 to Plaintiff included the Loan Modification.

67. PJS and/or PPS breached Plaintiff's Note, Mortgage and Modification [Instruments] still in effect, not making payments and/or not fulfilling their other obligations, now in default.

68. Plaintiff held and/or owned the Instruments and/or claims in this case, which it has standing to enforce prior to commencing suit, their principal balance exceeding $76,000.00, plus attorney's fees as provided by law and their terms.

69. All interests in the Property are subject to, subordinate and inferior to Plaintiff's senior interest, of which the Defendants had notice and/or knowledge, from which they benefitted, who will not be prejudiced or subjected to injustice by the relief sought.

70. The Saca Defendants were beneficiaries of the Instruments, which satisfied the debts on the Property, as PPS acted as a straw-man borrower for PJS, who borrowed the funds.

71. Acting with authority, the Saca Defendants intentionally ratified, assumed, adopted, approved the Instruments with full knowledge of their terms, communicating with Plaintiff and/or BOA

9

on them, performing them, receiving, accepting and retaining their benefits and seeking to enforce them, such as PJS seeking his fees and costs under them, which they are estopped from denying.

72. By their representations, acts and/or omissions as to the Instruments, the Saca Defendants conspired to falsely and/or fraudulently induce Plaintiff/BOA to consent to, fund and/or acquire the Instruments, from which the Saca Defendants benefitted by satisfying prior loans on the Property in which they resided.

73. Plaintiff/BOA were induced by the Saca Defendants to consent to, fund acquire and/or comply with the Instruments per the representations, acts and/or omissions of the Sacas that they would perform and be bound the Instruments as their legal obligations for which the Property was secured as collateral.

74. Plaintiff/BOA justifiably and/or detrimentally relied upon the representations, acts and/or omissions of the Saca Defendants as to representations, acts and/or omissions, as to the Instruments, that they were the same person and/or promised to comply with them and/or the Property was secured as collateral for their repayment, forbearing from enforcing them in exchange for that compliance, which the Saca Defendants are estopped from denying or disputing.

75. The false representations, acts and/or omissions of material fact of the Saca Defendants to Plaintiff/BOA were made with scienter from which the Sacas benefitted concretely and

10

personally by obtaining the loan funds and performance of BOA and/or Plaintiff under the Instruments.

76. The false, fraudulent conduct of the Saca Defendants proximately and/or damaged Plaintiff/BOA, which were induced to consent to and/or fund and/or acquire and/or comply with the Instruments after which the Sacas refused to comply with them and/or disputed their validity, including as to the Property.

77. All conditions precedent to suit occurred, were fulfilled, waived and/or their occurrence and/or fulfillment was unnecessary and/or futile.

### COUNT I: EQUITABLE SUBROGATION AND RELATED RELIEF AS TO ALL DEFENDANTS

78. ¶ 1-77 are incorporated by reference.

79. Plaintiff's loan was the intended senior interest in the Property, secured as collateral for that debt.

80. Plaintiff's predecessors fully paid, satisfied and obtained releases of the successive debts on the Property.

81. Plaintiff's predecessors were obliged to pay, fully satisfy and obtain releases from the successive debts in order to establish and maintain their senior lien interest in the Property per their terms and/or by law.

82. Plaintiff's predecessor was not personally liable for the successive prior debts on the Property.

83. Plaintiff's loan satisfied the successive prior debts on the Property and Plaintiff is equitably subrogated to the rights of its predecessor creditor on the Property.

84. The Defendants will be unjustly enriched at Plaintiff's expense if its intended senior interest in the Property is not enforced, without satisfying Plaintiff's loan for which it has no adequate legal remedy.

85. Per 28 U.S.C. § 2201, Fla. Stat. § 86.011 *et seq* and applicable law, Plaintiff requests the Court declare and establish its senior equitable subrogation lien on the Property and/or its proceeds, to which the Defendants are subject, securing payment of its loan, relating back to the execution, recordation and/or origination of the successive loans that its loan satisfied.

### COUNT II: REFORMATION AND RELATED RELIEF AGAINST ALL DEFENDANTS

86. ¶ 1-77 and ¶ 85 are incorporated by reference.

87. The Instruments were intended by BOA, Plaintiff and/or the Saca Defendants to bind them as parties to the Instruments and encumber Lots 15 and 525 as their collateral, which satisfied prior debt by the Saca Defendants on both lots.

88. The signatures of the Saca Defendants and a legal description of Lot 525 were accidentally, mistakenly, wrongfully, fraudulently and/or inequitably omitted from the Instruments, per

the misconduct of the Saca Defendants, impairing Plaintiff's interest in the Property, contrary to their intended purpose.

89. The Defendants will be unjustly enriched at Plaintiff's expense if its intended loan with the Saca Defendants and senior interest in both lots is not enforced, allowing them to benefit from the Property, without satisfying Plaintiff's loan for which it has no adequate legal remedy.

90. Per 28 U.S.C. § 2201 *et seq*, Fla. Stat. § 86.011 *et seq* Fla. Stat. § 697.01 *et seq* and applicable law, Plaintiff requests the Court declare and establish its senior interest in the Property and reform the Instruments to reflect PPS and/or PJS as their signatories, obligors and grantors of the Property and Lot 525 as collateral for the loan, relating back to their execution, recordation and/or origination, granting judgment for its fees, costs and damages against PJS.

### COUNT III: EQUITABLE LIEN/EQUITABLE MORTGAGE AND RELATED RELIEF AGAINST ALL DEFENDANTS

91. ¶ 1-77, ¶ 85 and ¶ 90 are incorporated.

92. The Property, Lots 15 and 525, was intended as collateral to secure repayment of Plaintiff's loan as its senior interest, which ultimately satisfied the prior loans.

93. An equitable lien and/or equitable mortgage to satisfy Plaintiff's loan is implied upon the Property, encumbering the

13

Property as the intended collateral for its loan, financed by and otherwise traceable to Plaintiff's loan funds.

94. The Defendants will be unjustly enriched at Plaintiff's expense if its senior intended interest in the Property is not enforced, allowing them to benefit from it, without satisfying Plaintiff's loan for which it has no adequate remedy at law.

95. Per 28 U.S.C. § 2201 *et seq*, Fla. Stat. §86.011 and applicable law, Plaintiff requests the Court declare and impose its senior equitable lien and/or equitable mortgage on the Property and/or its proceeds, to which the Defendants are subject, securing payment of its loan, relating back to the execution, recordation and/or origination of the successive loans that its loan satisfied.

### COUNT IV: CONSTRUCTIVE TRUST
### AND RELATED RELIEF AGAINST ALL DEFENDANTS

96. ¶ 1-77, ¶ 85 and ¶ 90 and ¶ 95 are incorporated.

97. The Property was intended as collateral to secure repayment of Plaintiff's loan as the senior interest in the Property, which satisfied the prior loans.

98. The Defendants will be unjustly enriched at Plaintiff's expense if its senior, intended interest in the Property as the collateral for its loan is not enforced, allowing them to benefit from the Property, without satisfying Plaintiff's loan, for which it lacks an adequate remedy at law.

99. A constructive trust is implied upon the Property and/or its proceeds to satisfy Plaintiff's loan as the Defendants cannot otherwise enjoy any beneficial interest in the Property without violating established principles of equity.

100. Per 28 U.S.C. § 2201 *et seq*, Fla. Stat. §86.011 and applicable law, Plaintiff requests the Court declare and impose its senior constructive trust on the Property and/or its proceeds, to which Defendants are subject, securing payment of its loan relating back to the execution, recordation and/or origination of the successive loans that its loan satisfied.

### COUNT V: JUDICIAL FORECLOSURE OF REAL PROPERTY AND RELATED RELIEF AGAINST ALL DEFENDANTS

101. ¶ 1-77, ¶ 85, ¶ 90, ¶ 95 and ¶ 100 are incorporated.

102. The Saca Defendants intentionally ratified, assumed, adopted, approved and breached the Instruments, in which they are in default, who provided materially false, misleading or inaccurate information or failed to disclose in the loan application process and in the Modification a) that PPS was acting as a straw-man borrower of the Instruments for PJS, contrary to 18 U.S.C. § 1001 and 1014.

103. Plaintiff accelerated the principal balance of its loan of which PPS and/or PJS were given notice and/or notice was not required and/or is futile.

15

104. Per 28 U.S.C. § 2201 and § 2001 *et seq*, Fla. Stat. § 86.011 *et seq*, § 65.011 *et seq*, § 701.01 *et seq*, § 45.011 *et seq* and applicable principles, Plaintiff requests the Court declare, establish and judicially foreclose its senior interest in the Property, its fixtures, appurtenances, rents, contents and insurance for the principal due on its loan plus interest, charges, expenses, costs and fees, taxes and abstracting, in which all other claims and interests are inferior, subordinate, barred, foreclosed and quieted to all right, title, interest and equity of redemption.

### COUNT VI: POSSESSION AND RELATED RELIEF AGAINST THE SACA DEFENDANTS AND/OR ALL OTHERS

105. ¶ 1-77, ¶ 85, ¶ 90, ¶ 95, ¶ 100, ¶ 104 are incorporated.

106. The Saca Defendants and/or others occupy and possess the Property, which Plaintiff and/or any purchaser at sale is entitled to post-sale possession and/or payments.

107. Plaintiff is entitled to payment of all rents, as PPS and/or PJS assigned all leases of the Property to Plaintiff, such as those above, along with all security deposits made in connection with the leases. [Mortgage, ¶ 16]

108. Per Fed. R. Civ. P. 64-65, § 697.01 *et seq*, 701.01 *et seq*, Fla. Stat § 66.011 *et seq* and applicable law, Plaintiff requests the Court compel the Saca Defendants to make payments during this case, including all rents, awarding foreclosure and/or possession for failure to make payments, granting possession of

the Property to Plaintiff and/or any other purchaser at sale, ejecting the Sacas and/or any others.

### COUNT VII: ENFORCEMENT OF INSTRUMENTS AND RELATED RELIEF AGAINST PJS

109. ¶ 1-77, ¶ 85, ¶ 90 ¶ 95, ¶ 100 ¶ 102-04 are incorporated.

110. The Instruments are in default and PJS is indebted to Plaintiff for their principal balance, plus attorney's fees, pre-judgment and post-judgment interest and costs.

111. Plaintiff may simultaneously pursue the remedies of foreclosure, possession and suit on the indebtedness.

112. Plaintiff requests the Court grant judgment against PJS for the principal due on the Instruments, plus pre and post-judgment interest, attorney's fees and costs.

113. The individual Defendants are not currently in and have not been in the military for the last 30 days and are not subject to protection under 50 U.S.C. §3901 *et seq*.

WHEREFORE, Plaintiff prays for the following relief:

(a) Per Count I, that the Court declare and establish its senior equitable subrogation lien on the Property and/or its proceeds, to which the Defendants are subject, securing payment of its loan, relating back to the execution, recordation and/or origination of the successive loans that its loan satisfied;

17

(b) Per Count II, that the Court declare and establish its senior interest in the Property and reform the Instruments to reflect PPS and/or PJS as their signatories, obligors and grantors of the Property and Lot 525 as collateral for the loan, relating back to their execution, recordation and/or origination, granting judgment for its fees, costs and damages against PJS;

(c) Per Count III, that the Court declare and impose its senior equitable lien and/or equitable mortgage on the Property and/or its proceeds, to which the Defendants are subject, securing payment of its loan, relating back to the execution, recordation and/or origination of the successive loans that its loan satisfied; and

(d) Per Count IV, that the Court declare and impose its senior constructive trust on the Property and/or its proceeds, to which Defendants are subject, securing payment of its loan relating back to the execution, recordation and/or origination of the successive loans that its loan satisfied; and

(e) Per Count V, that the Court declare, establish and judicially foreclose its senior interest in the Property, its fixtures, appurtenances, rents, contents and insurance for the principal due on its loan plus interest, charges, expenses, costs and fees, taxes and abstracting, in which all other claims and interests are inferior, subordinate, barred, foreclosed and quieted to all right, title, interest and equity of redemption;

(f) Per Count VI, that the Court compel the Saca Defendants to make payments during this case, including all rents, awarding foreclosure and/or possession for failure to make payments, granting possession of the Property to Plaintiff and/or any other purchaser at sale, ejecting the Sacas and/or any others; and

(g) Per Count VII, that the Court grant judgment against PJS for the principal due on the Instruments, plus pre and post-judgment interest, attorney's fees and costs; and

(h) All other just and proper relief.

Respectfully submitted this 1st day of May, 2017.

By: */s/Paul G. Wersant*
Paul G. Wersant
Florida Bar No. 48815
Albertelli & Whitworth, P.A.
100 Galleria Parkway, Suite 960
Atlanta, Georgia 30339
Telephone: (770) 373-4242, Ext: 2476
Fascimile: (770) 373-4260
Email: pwersant@alaw.net
Attorneys for Plaintiff
File No. 15-184535